UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | No. 25-cr-10080-IT |
| CHRISTIAN DECRISTOFARO, | ) | |
| Defendant | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully submits this memorandum in connection with the sentencing of defendant Christian Decristofaro.[1] Pursuant to the parties' plea agreement, and for the reasons set forth below, the government recommends that the Court impose the following sentence: incarceration for 33 months, two years of supervised release, and restitution and forfeiture each in the amount of $2,196,323, in addition to the mandatory special assessment of $100.[2]

## I. THE OFFENSE CONDUCT

The offense conduct is summarized below and set forth in detail in the Presentence Investigation Report ("PSR"). *See* PSR ¶¶ 8–21. The defendant orchestrated and executed a scheme to defraud a home repair insurance provider, referred to in the information as "Victim 1," of more than two million dollars by billing for purported repair jobs that did not exist and were never performed. The scheme began shortly after the defendant's plumbing company, Prometheus Plumbing LLC, was terminated from Victim 1's network due to concerns about, among other

[1] On March 25, 2025, the defendant waived indictment and pled guilty to a one-count information charging him with wire fraud, in violation of 18 U.S.C. § 1343. Sentencing is scheduled for July 22, 2025.

[2] The government is not recommending a fine in light of the substantial restitution and forfeiture amounts.

things, whether the company was actually doing the work it was assigned and invoicing. In or around September 2020, the defendant directed his brother (who goes by a different last name) to incorporate a purported home repair company called NE Premier Home Services LLC ("NE Premier"). He did so in order to conceal his involvement with NE Premier so that he could successfully enroll the new company with Victim 1 and continue operating within its network.

Around the same time that Victim 1—unaware of the defendant's control of the company—accepted NE Premier into its network, the defendant used false identities to enroll fictitious homeowners in Victim 1's insurance plans. The defendant then falsely reported home emergencies to Victim 1, impersonating the fictitious homeowners he had enrolled and requesting that Victim 1 assign NE Premier to perform the repair work purportedly required to address these non-existent home emergencies. When Victim 1 contacted NE Premier to confirm its availability, the defendant—pretending to be his brother—represented that NE Premier was available, and, as a result, Victim 1 assigned the purported jobs to NE Premier. The defendant then caused NE Premier to bill Victim 1 for repair work that was never performed—because there were no actual homeowners/policyholders and no real home emergencies.

In total, between approximately October 2020 and June 2023, the defendant caused Victim 1 to assign approximately 1,556 purported repair jobs—each tied to one of the fictitious policyholders the defendant enrolled—to NE Premier for non-existent home emergencies, and to pay NE Premier approximately $2,196,323 for the purported jobs that were never performed. The defendant diverted these funds to his company, Prometheus Plumbing, and then spent them on, among other things, international travel and luxury jewelry and clothing items. Victim 1 ultimately discovered the fraud in the course of an internal audit, terminated its relationship with NE Premier, and referred the matter to law enforcement.

## II. THE SENTENCING GUIDELINE RANGE

The parties and the Probation Office agree that pursuant to the calculation set forth below, the defendant's total offense level under the Sentencing Guidelines is 20, which, based on a criminal history score of zero and resulting criminal history category I (*see* PSR ¶¶ 43–44), yields a guideline imprisonment range of 33 to 41 months:

- Base offense level of seven (USSG § 2B1.1(a)(1));
- Increase of 16 because the loss attributable to the offense is more than $1,500,000 but not more than $3,500,000 (USSG § 2B1.1(b)(1)(I))[3];
- Increase of two because the offense involved sophisticated means, and the defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG § 2B1.1(b)(10)(C));
- Decrease of three for acceptance of responsibility (USSG § 3E1.1); and
- Decrease of two because the defendant has zero criminal history points and otherwise meets the criteria for the adjustment under USSG § 4C1.1.

## III. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government respectfully requests that the Court sentence the defendant to 33 months in prison and two years of supervised release, and order him to pay restitution and forfeiture each in the amount of $2,196,323, in addition to the mandatory special assessment of $100. The government submits that its recommended sentence—incarceration at the low end of the guideline range as the parties and the Probation Office have calculated it—is a reasonable and just outcome that is sufficient but not greater than necessary to reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment, and serve to deter the defendant from re-offending and others from engaging in similar conduct.

[3] This calculation is based on a loss figure of approximately $2,196,323, which, as discussed above, reflects the total amount Victim 1 paid NE Premier for purported home repair jobs that were never performed.

First, the nature and circumstances of the offense warrant a meaningful term of imprisonment. The defendant stole more than two million dollars that he was not entitled to, and he would have stolen more but for the fact that Victim 1 discovered his scheme. All of the steps he took to orchestrate and execute the fraud, including using his own brother to achieve his aims, demonstrate that this was not an isolated crime of opportunity. It was not a mistake or a momentary lapse of judgment. It was a series of calculated steps, and an effort to steal as much money as possible without getting caught. The defendant perpetrated the scheme over a period of years, receiving payment after payment from Victim 1, and spending the money to live well beyond his means. He did not steal in order to support an addiction or merely to repay financial debts, and while neither would excuse his conduct, this sets him apart from some other financial fraud defendants. Moreover, the defendant's scheme came to an end only because he did eventually get caught. These factors underscore the serious nature of the defendant's crime and weigh in favor of a meaningful prison sentence.

The defendant's history and characteristics also support the government's sentencing recommendation. While he did not share a relationship with his father and his family struggled financially, it appears that the defendant grew up in a loving household and has the continued support of family members with whom he shares a close relationship. He had the opportunity to earn a college degree, decided to go into the plumbing trade rather than continue his education, and maintained steady, gainful employment as a plumber, eventually establishing his own plumbing business. Unlike many defendants who appear before this Court, the defendant has not struggled with poverty, addiction, or a lack of education and opportunity. To be clear, while these challenges do not excuse criminal conduct, they often provide some degree of context for it. That is not the case here. The government is aware of no compelling mitigating factors, and no

reasonable explanation for the defendant's conduct other than greed, entitlement, and a mistaken belief that he was somehow above the law.

Third, the government's recommended sentence not only reflects the serious nature of the offense, but also promotes respect for the law and provides both just punishment and adequate deterrence. The defendant's criminal activity offends the rule of law, and in this case the need for general deterrence is especially important. Insurance theft is a relatively common crime, and it is not always easily detected. A meaningful term of imprisonment is necessary to deter others who might hold the misguided belief that stealing insurance money is a no harm, no foul crime. Those who consider defrauding insurance companies should understand that there is no such thing as free money and no such thing as a victimless crime. They should know that when they get caught, they will face serious consequences, and not only in the form of financial penalties. Absent a significant prison sentence, others inclined to engage in this type of criminal conduct may decide that it is worth the risk, where they "stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

In this case, there is also a need for specific deterrence. While the defendant is a first-time offender, he committed fraud repeatedly, and there is little doubt that his scheme would have continued if Victim 1 had not discovered it, resulting in the present charges. Indeed, not only did the defendant perpetrate the charged scheme in response to Victim 1's termination of Prometheus Plumbing from its network, but he also attempted to get back into the network via different companies after NE Premier too was terminated. This is a troubling pattern of conduct that suggests a lack of understanding regarding the serious nature of the offense and potentially a lack of genuine remorse. These considerations raise a real concern that the defendant poses a risk of recidivism, and this too counsels in favor of the government's recommended sentence.

Finally, while comparisons to other financial fraud cases are inherently imperfect given the case-specific circumstances that drive sentencing in each case, the government's recommendation here is reasonable based on sentences imposed in similar cases in this District. *See, e.g., United States v. Bhambi*, 23-cr-10079-FDS (46-month sentence imposed on defendant who embezzled approximately $2.5 million from her employer); *United States v. Ezeonyido*, 24-cr-10272-LTS (27-month sentence imposed on defendant who submitted fraudulent health insurance claims totaling more than $1 million); *United States v. Legassa*, 22-cr-10038-IT (42-month sentence imposed on defendant convicted at trial for embezzling nearly $600,000). The government recognizes that its recommended sentence of 33 months is significant and does not take its responsibility to recommend an appropriate sentence lightly. The government believes that a low-end guideline sentence is appropriate, despite the defendant's prompt acceptance of responsibility, as there is no articulable basis for a downward variance in light of all the circumstances discussed above.[4] A sentence of 33 months properly reflects the seriousness of the defendant's offense, promotes respect for the law, provides just punishment, and will serve to deter the defendant from re-offending and others from engaging in similar conduct.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court impose the following sentence: incarceration for 33 months, two years of supervised release, and

[4] The government recognizes and is sympathetic to the defendant's responsibilities as a caregiver, including for his autistic son. It is the government's understanding that the defendant does not presently reside in the same household as any of his children. While a prison sentence will undoubtedly impact the defendant's children and his relationship with them regardless, and this is a factor to be considered in fashioning an appropriate sentence, the government does not view it as exceptionally mitigating to warrant a downward variance.

restitution and forfeiture each in the amount of $2,196,323, in addition to the mandatory special assessment of $100.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Leslie A. Wright*
LESLIE A. WRIGHT
MEGHAN C. CLEARY
Assistant United States Attorneys

Certificate of Service

I hereby certify that this document was filed through the ECF system on July 15, 2025 and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

By: */s/ Leslie A. Wright*
LESLIE A. WRIGHT
Assistant United States Attorney